960 So.2d 869 (2007)
STATE of Florida, Appellant,
v.
Adrian Lorenzo THOMAS, Appellee.
No. 2D06-1329.
District Court of Appeal of Florida, Second District.
July 13, 2007.
*870 Bill McCollum, Attorney General, Tallahassee, and Chandra Waite Dasrat, Assistant Attorney General, Tampa, for Appellant.
Michael A. Giasi of Frank de la Grana, P.A., Tampa, for Appellee.
KELLY, Judge.
The State appeals the trial court order granting Adrian Lorenzo Thomas's motion to suppress evidence in its case against him for two counts of possession of a controlled substance with the intent to sell or deliver within 1000 feet of a church, one count of possession of cannabis with the intent to sell or deliver, and one count of obstructing or opposing an officer without violence. Because the trial court erred in finding that the information provided by the confidential informant (CI) was not sufficiently detailed or verifiable to give the officers probable cause to arrest Thomas, we reverse.
At the hearing on Thomas's motion to suppress, Officer Nathan Sanders testified that he and Officer Sean Bell received information from a cooperating defendant (the CI) that an individual she knew as A.D. would sell her one-half ounce of cocaine for approximately $400. The CI had never previously provided information to the police and did so on this occasion following her own arrest. The CI told the officers that she had purchased drugs from A.D. in the past and described him as a black male, medium height, with a dark complexion. She gave the officers A.D.'s cellular telephone number, told them he *871 belonged to a gang called the "Drack Boys," that he resided in the Sulphur Springs area, and that he drove a bronze-colored Lexus SUV. Officer Bell confirmed that there was in fact a member of the "Drack Boys" gang whose nickname was A.D.
The officers instructed the CI to telephone A.D. and arrange a meeting to purchase the cocaine. The officers monitored and recorded that call as well as subsequent calls the CI made to A.D. During the initial call, A.D. agreed to sell a "half" to the CI "for the same thing, $435" and directed her to meet him at a particular B.P. gas station. As the officers and the CI waited in the gas station parking lot, a black male wearing a white t-shirt pulled up in a silver Lexus SUV. Neither the CI nor the officers were able to clearly see the driver's face. Consequently, the CI could not confirm that A.D. was the driver. At that point, the officers instructed the CI to call A.D. again and find out his location. The CI called A.D. and he told her that he was at the B.P. station. However, the CI still had not been able to see the driver of the SUV well enough to positively identify him as A.D. The SUV drove away approximately five minutes after arriving at the gas station.
At the officers' request, the CI again called A.D. to find out where he was. He told her that he had left the B.P. station because she had not shown up. A.D. told the CI to meet him at the "Snacks" convenience store located in the Nuccio Park area near Sligh Avenue and 50th Street. The CI told officers she knew the area because she had met A.D. at that location in the past. As the officers and the CI approached the location, the CI called A.D., told him she was in the area, and asked him if he was at the convenience store. A.D. responded that he was and for the CI to meet him. At that point, an officer watching the store observed a black male in a white t-shirt fitting A.D.'s description walking toward the store while talking on his cell phone. The officers drove the CI by the store, and she positively identified this individual as A.D. Her identification was corroborated by Officer Bell who testified that he recognized the black male walking toward the convenience store as A.D. based upon his prior investigation of the "Drack Boys" gang. After confirming the individual's identity as A.D., the officers arrested and searched him. A.D., who turned out to be Adrian Thomas, had sixteen grams of cocaine and a Lexus key in his pocket and $898 in his wallet. A subsequent search of the Lexus SUV Thomas had been driving uncovered additional contraband.
Thomas moved to suppress the drugs seized from his person and from the SUV arguing, among other things, that the information provided by the CI was not sufficient to give the officers probable cause to arrest him. At the conclusion of the hearing on the motion to suppress, the trial court entered an order granting Thomas's motion after concluding that the information provided by the CI "was not detailed verifiable information," and, accordingly, the officers did not have probable cause to arrest Thomas. On appeal, the State contends that the CI provided sufficiently specific and verifiable information to give rise to probable cause to arrest Thomas. In reviewing the trial court's ruling on a motion to suppress, we give deference to the trial court's findings of fact where they are supported by competent, substantial evidence; however, we review the trial court's application of the law to the facts de novo. Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Connor v. State, 803 So.2d 598 (Fla.2001).
*872 The existence of probable cause justifying a warrantless arrest depends on whether, when the arrest was made, "`the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). Determining whether the probable cause standard is met when the police rely on information provided by a confidential informant requires an evaluation of the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230-31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Butler, 655 So.2d 1123, 1125 (Fla.1995). Information regarding the informant's veracity, reliability and basis of knowledge are relevant considerations in the totality of the circumstances analysis; however, they are not rigid requirements that must be independently satisfied in every case. Gates, 462 U.S. at 230, 103 S.Ct. 2317. "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id. at 233, 103 S.Ct. 2317. (Citations omitted).
Here, the CI indicated that she had personal knowledge that Thomas sold drugs because she had previously purchased drugs from him. The fact that Thomas responded to her telephone calls and that the calls influenced his actions corroborated the CI's claim that she knew Thomas and had done business with him in the past. The CI described Thomas and provided his gang affiliation. Officer Bell confirmed that he knew of an individual whose nickname was A.D., that he was a member of the gang, and that he matched the description provided by the CI. In the parking lot at the convenience store, the CI identified Thomas as A.D., and Officer Bell confirmed that Thomas was the individual he knew as A.D. The police were able to observe Thomas's actions in response to the controlled telephone calls made by the CI and confirm that Thomas behaved in a manner that was consistent with the telephone conversations. Further, because the officers monitored and recorded both sides of the telephone conversations between the CI and A.D., Thomas's own words verified that he had sold drugs to the CI in the past, that he intended to sell half an ounce of cocaine to her that day within a specified time, and that the transaction was to take place at a specified location.
While Thomas makes much of the fact that the CI had not provided information to the police in the past, as explained in Gates, a deficiency in one circumstance relevant to demonstrating reliability may be overcome by a strong showing as to another or by some other indicia of reliability. Id. at 233, 103 S.Ct. 2317. The recorded telephone conversation in which Thomas agreed to sell cocaine to the CI was a strong indicator of the reliability of the CI's claim and one which we have no problem concluding overcomes the fact that she had not previously provided information to the police. We also note that the CI offered to provide the information to the police in conjunction with her arrest after police executed a search warrant at her residence. We have previously found that such circumstances may provide an indicia of reliability. See State v. Hendrex, 865 So.2d 531, 535 (Fla. 2d DCA 2003) (noting that the informant's desire to curry favor with police would make it more likely that he would provide truthful information). In light of all the circumstances, we conclude that the officers had sufficient reasonably trustworthy information, not *873 the least of which was Thomas's own words, "to warrant a man of reasonable caution in the belief" that Thomas possessed cocaine that he intended to sell to the CI. Accordingly, we reverse the order granting Thomas's motion to suppress and remand for further proceedings.
Reversed and remanded.
WHATLEY and CASANUEVA, JJ., Concur.