965 So.2d 1246 (2007)
David BREVICK, Appellant,
v.
STATE of Florida, Appellee.
Nos. 5D06-3422 to 5D06-3424.
District Court of Appeal of Florida, Fifth District.
October 5, 2007.
*1247 Kepler B. Funk, Keith F. Szachacz and Alan S. Diamond, of Funk, Szachacz & Diamond, LLC, Melbourne, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
David Glenn Brevick ["Defendant"] appeals the trial court's judgment, revoking the probation he was serving for several 2005 convictions. Because we conclude that the State failed to prove a new law violation, we reverse.
On March 27, 2006, Defendant was arrested for providing false information to an officer, in violation of section 901.36, Florida Statutes. The trial court held a hearing to determine whether Defendant had actually violated section 901.36, Florida Statutes, and, thus, had also violated his probation.
At the hearing, the testimony of Francia Vargas, Officer Ken Shedrick, Officer Lisa Smoak, and Defendant established that the following had occurred: On the evening of March 27, 2006, Ms. Vargas, Defendant, and Ms. Vargas' son ("Son") were in Ms. Vargas' apartment. While there, they received calls from Ms. Vargas' ex-husband, Juan Carvajal. Mr. Carvajal later came to the apartment, demanding to see Son. When Mr. Carvajal attempted to grab Son and put him in his truck, the boy ran away. Ms. Vargas and Defendant got into Ms. Vargas' car and drove around the neighborhood, looking for Son.
Ken Shedrick, an off-duty officer with the Cocoa Police Department, lived in the same Melbourne apartment complex as Ms. Vargas. While Defendant and Ms. Vargas were driving around the neighborhood, Officer Shedrick was returning home from work. As he was returning home, *1248 Mr. Carvajal ran up to his car. Carvajal was upset and yelling in a mix of Spanish and English. Carvajal indicated to Officer Shedrick that he thought Defendant had harmed or scared away his son. About that time, Defendant and Ms. Vargas drove up. Both Defendant and Ms. Vargas remained in their car. Defendant rolled down his window to hear what was going on.
Since Officer Shedrick was outside his jurisdiction, he called the Melbourne Police Department for service. Meanwhile, Defendant and Mr. Carvajal began arguing. Then, in sight of Officer Shedrick, Mr. Carvajal ran over to the car in which Defendant was sitting and punched Defendant in the face through the open car window. Defendant remained in the car, and did not fight back.
When Melbourne Police Department Officer Smoak arrived at the scene, Defendant told Officer Smoak that he did not want to press charges against Carvajal for the battery. Officer Smoak then asked Defendant his name. According to Officer Smoak, Defendant gave her his middle and last name, which would be "Glen Brevick."[1]
Officer Shedrick ran a computer check on the name that Defendant had provided, but could not retrieve any information on that name. Defendant then admitted that he had not given his full name because he was on probation and had been instructed to have no contact with police.
Officer Smoak testified at the hearing that, at the time Defendant gave her the false information, it appeared that Defendant was the victim. Nonetheless, she explained that Defendant was not free to leave at that time. She said:
He was being detained because I was trying to figure out everything that was going on. It wasn't a very peaceful moment at that time. No one was free to leave until I figured out what was going on.
She said that the reason he was not free to leave was that she had not completed her investigation. There is no indication in the record, however, that the officers stopped Defendant at the scene, that they asked him to remain, or that they asked him to exit his vehicle prior to his arrest. There is also no indication in the record that either of the officers communicated to the Defendant that he was not free to leave.
At the conclusion of the hearing, the trial court found that it was "clear from [Defendant's] own testimony that he knew he was giving false information to them," and that "he was giving it so he wouldn't be detected." The judge observed that, "really, the only factual issue remaining is whether he's being detained at that point. And while the investigation was being done he was being detained. The Court finds a willful and substantial violation of condition 5 of the orders of probation." He was sentenced to concurrent terms of *1249 16.2 months in prison with 24 months of probation to follow.
Section 901.36(1), Florida Statutes (2006) provides:
It is unlawful for a person who has been arrested or lawfully detained by a law enforcement officer to give a false name, or otherwise falsely identify himself or herself in any way, to the law enforcement officer or any county jail personnel. Except as provided in subsection (2), any person who violates this subsection commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
Accordingly, "[t]he plain language of section 901.36(1) requires that, in order to be in violation of the statute, the giving of a false name or identification must occur following arrest or lawful detention." Whyte v. State, 940 So.2d 1174, 1175 (Fla. 2d DCA 2006).
There was indisputably no lawful arrest preceding the giving of the false name in this case. The issue is whether Brevick was "lawfully detained." Police contact rises to the level of a detention when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Voorhees v. State, 699 So.2d 602, 608 (Fla.1997). A detention does not occur simply because an officer approaches and asks questions, or requests to examine identification. See id. A detention is "lawful" when the officer has "a reasonable suspicion that the person has committed, is committing, or is about to commit a crime." Slydell v. State, 792 So.2d 667, 671 (Fla. 4th DCA 2001); § 901.151(2), Fla. Stat. (2006).[2] "Whether an officer's suspicion is reasonable is determined by the totality of the circumstances which existed at the time of the stop and is based solely on facts known to the officer before the stop." Id.
Although it appears that Officer Smoak's activities may have been, from her perspective, a "detention" to determine whether Defendant had committed an offense, nothing in the record suggests any basis to conclude that Defendant would have had reason to know he had been detained; i.e., that he was not free to leave. He had just been battered, the victim of an unprovoked attack, while sitting in his vehicle. As far as the record shows, he remained in his vehicle. His statement that he did not want to press charges reflects his state of mind as a victim, not a suspect. Even Officer Smoak, in coaxing him to give his correct name, told him only that she had to have it to "document" her report. The language of section 901.36(1) suggests that the commission of an offense under that statute requires either a subjective or an objective awareness that the individual has been detained by police, thereby triggering the statute's requirement of truthful identification.
REVERSED and REMANDED.
TORPY and ORFINGER, JJ., concur.
*1250 GRIFFIN, J., concurring and concurring specially with opinion.
GRIFFIN, J., concurring specially.
Although not raised below or on appeal, there is a second reason why Mr. Brevick should not have been convicted. The facts of this case and the arguments made on behalf of Mr. Brevick are well within the parameters of what the case law denominates "recantation." A.A.R. v. State, 926 So.2d 463 (Fla. 4th DCA 2006); see also Atkins v. State, 959 So.2d 1267 (Fla. 5th DCA 2007). Assuming that the information Defendant provided rose to the level of giving a "false name" or "falsely identifying himself," Mr. Brevick promptly recanted and provided complete and correct information immediately upon being taxed by law enforcement with the accuracy of the identity information he had given. He explained he had not expected anyone to try to verify his identity, merely record it in a report. As soon as he was informed that his identity was being investigated, he acted promptly to give the correct information. The wasted time and effort on the part of law enforcement was minimal. Therefore, this record does not establish the commission of an offense under section 901.36.
NOTES
[1] Further, Officer Smoak testified that Defendant gave her a date of birth that was off by one digit. Defendant testified that he gave his correct birth date. He also said he gave his first and middle name. Specifically, Defendant testified:

Q. So the purpose of giving Officer Smoak David Glen as your name was because you didn't want, it was to cover up the fact, why exactly did you give David Glen as your name?
A. Well, it's my first and middle name. I just thought she was going to take the note-pad (sic) and that would be the end of it and let us go.
At the same time Officer Nelson said no contact with police so I thought that meant absolutely none. So yes, I was trying to do what was right in my own way.
[2] Section 901.151(2), Florida Statutes (2006) ("Florida Stop and Frisk Law") provides:

Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person's presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.