PER CURIAM.
The State appeals the trial court’s two orders granting the defendant’s motion to suppress any evidence obtained as a result of his allegedly unlawful arrest. The State argues that, based on the totality of the circumstances, the officers had probable cause to arrest the defendant at the time he was taken into custody. We agree and reverse.

I. Facts

The relevant facts are largely undisputed. In the early morning hours of April 4, 2009, Kelly Jo Holley was shot in a residence in the Derby Woods subdivision in Lynn Haven, Florida. At approximately 1:20 or 1:30 a.m., while walking his dog in the subdivision, Oliver Schmidt observed a navy blue or black BMW drive past him and park in an odd location in the subdivision. The location was a couple hundred feet, maybe less, from the residence where Holley was shot. The man exited the BMW, spoke briefly to Schmidt, shut his door, and walked away. Schmidt continued walking down the street a couple of blocks and eventually lost sight of the BMW.
Schmidt then heard a gunshot. A couple seconds later, he called 911. Maybe a minute or two later, while still on the phone, he heard a vehicle start up and speed down the street. The sounds were coming from the direction where the BMW had been parked. When he reached a point where he could see the vehicle, Schmidt saw a navy blue or black sporty vehicle speed out of the subdivision and head west on Highway 390. He could not positively identify the vehicle as the BMW.
While en route to the scene, Lieutenant David Ward was told that there was a shot fired in the subdivision and a dark colored vehicle was seen fleeing from the subdivision and heading west on Highway 390. *840 Based on that information, he put out a BOLO for a black sporty vehicle heading west on Highway 390. When he arrived at the scene, he discovered that a shot was fired from outside the residence into the front bedroom and Holley had been shot in the back. There were at least four other individuals in the residence at the time of the shooting, including Stephanie Pugh, who lived at the residence, but no one saw the shooter. When Lieutenant Ward asked the occupants who could have fired the shot, Pugh threw out the defendant’s name as a possible suspect because he was Holley’s former boyfriend and had been allegedly harassing and/or stalking Holley. When she heard that a black BMW had been involved, she told Lieutenant Ward that the defendant drove a black BMW. After confirming that Schmidt had seen a BMW, Lieutenant Ward updated the BOLO for a black BMW heading west on Highway 390 and the defendant as the driver.
About 15 minutes after Lieutenant Ward arrived on the scene and about a minute after the updated BOLO went out, Deputy Trey Stanford spotted a black BMW heading west on Highway 390, about four or five miles from the scene and proceeded to pull the vehicle over. He called the tag in and was told that the tag came back to the defendant. When Deputy Stanford made contact, the driver identified himself as the defendant. At 1:54 a.m., Deputy Stanford detained the defendant, handcuffing him and placing him in the back of his patrol car as a suspect in the shooting. At 2:00 a.m., Deputy Stanford transported the defendant to the Sheriffs Office for questioning and the vehicle was impounded. The vehicle was subsequently searched.
At 4:20 a.m., at the Sheriffs Office, Schmidt identified the defendant’s vehicle as the vehicle he saw parked in the subdivision. Sometime before 10:52 a.m., the defendant was transported to jail. At 12:00 p.m., Investigator Mitch Pitts wired the attorney visitation room where he hoped to secretly record a conversation between the defendant and his mother during their visit. The defendant made incriminating statements to his mother regarding the shooting.
The defendant was later charged with aggravated battery with a firearm and shooting into an occupied dwelling. He filed a motion to suppress any evidence seized from his vehicle, Schmidt’s identification of his vehicle, and his statements to his mother. He argued that, when he was transported to the Sheriffs Office, it amounted to a de facto arrest without probable cause and any evidence obtained as a result of that unlawful arrest was subject to suppression. The State took the position that the officers had probable cause to arrest the defendant at the time he was taken into custody. Following a suppression hearing, the trial court entered an order granting the portion of the defendant’s motion seeking suppression of any evidence seized from his vehicle and Schmidt’s identification of his vehicle and a subsequent order granting the portion of the defendant’s motion seeking suppression of his statements to his mother.

II. Analysis

In Pagan v. State, the Florida Supreme Court stated:
[A] trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling. The reviewing court is bound by the trial court’s factual findings if they are supported by competent, substantial evidence. The trial court’s determina *841 tion of the legal issue of probable cause is, however, subject to the de novo standard of review.
830 So.2d 792, 806 (Fla.2002) (citations omitted).
A warrantless arrest must be supported by probable cause. See Popple v. State, 626 So.2d 185, 186 (Fla.1993) (identifying the third level of police-citizen encounters as arrests supported by probable cause). To establish probable cause, the State must demonstrate that an officer had reasonable grounds to believe that the arrestee committed the crime. See Blanco v. State, 452 So.2d 520, 523 (Fla.1984) (“The probable cause standard for a law enforcement officer to make a legal arrest is whether the officer has reasonable grounds to believe the person committed a felony.”); § 901.15(2), Fla. Stat. (2009) (providing that an officer may arrest a person without a warrant when a felony has been committed and he or she reasonably believes that the person committed it). The existence of probable cause is not based on a formulaic determination, but rather on the probability of criminal activity. See Doorbal v. State, 837 So.2d 940, 952-53 (Fla.2003).
In the instant case, at the time the defendant was pulled over, the officers had the following information. A navy blue or black BMW parked near the residence shortly before the shooting. A man exited the BMW and walked away. Gunshots were heard and a navy blue or black sporty car sped out of the subdivision and headed west on Highway 390. The defendant was Holley’s former boyfriend, had allegedly been harassing and/or stalking Holley, and drove a black BMW. Within half an hour of the shooting, the defendant was pulled over four or five miles from the residence driving a black BMW. Based on the totality of the circumstances, the State clearly demonstrated that the officers had reasonable grounds to believe that the defendant shot the victim. Consequently, the officers had probable cause to arrest the defendant at the time he was taken into custody.
Accordingly, we reverse the trial court’s orders granting the defendant’s motion to suppress the evidence obtained as a result of his arrest.
REVERSED.
THOMAS, ROBERTS, and MARSTILLER, JJ., concur.