MARSTILLER, J.
Robert Corbin Smith, Jr., (“Appellant”) challenges his conviction and three-year sentence for trafficking in hydrocodone raising three arguments. He challenges the trial court’s denial of his motions to suppress statements and physical evidence, and he argues that section 893.101, *967 Florida Statutes, renders the statute under which he was convicted, section 893.135(l)(e)l.a., Florida Statutes (2010), an unconstitutional strict liability statute. As to the latter issue, the Florida Supreme Court’s recent decision in State v. Adkins, 96 So.3d 412, 2012 WL 2849485 (Fla.2012), is fatal to Appellant’s argument. However, we conclude that the trial court should have granted the motions to suppress, and we reverse Appellant’s conviction and sentence.
The circumstances leading to Appellant’s arrest are as follows. On June 30, 2010, just before 3:00 a.m., Santa Rosa County Sheriffs deputy was patrolling a residential neighborhood when he discovered a person lying on the ground in the yard of one of the homes. The person lay next to a truck parked not in the driveway, but up on the yard. It was raining; the person was not moving; the driver side door of the truck was wide open, the keys were in the ignition, and the radio was playing loudly. No one else was around, and the residence was dark.
The deputy shone his spotlight on the man. When the man got to his feet and started walking toward the officer, the deputy stopped his patrol car, got out, approached him. The deputy asked the man’s name and asked for identification. The man turned and walked to the truck; the deputy followed. At the truck, the man retrieved his driver’s license from his wallet and gave it to the deputy. The license identified the man as the Appellant in this case. The deputy observed that Appellant was unsteady and slurring his speech, and appeared intoxicated “or under the influence of something.” Appellant explained that the residence belonged to the sister of his estranged wife, and that he believed his wife was staying there.
After producing his license, Appellant put his wallet back in the truck, on the driver’s seat. It appeared to the deputy that Appellant, when returning his wallet to driver’s seat, was trying to obscure a small, clear plastic bag containing several white pills also lying on the seat. The deputy told Appellant to step aside, and then reached in the vehicle, picked up the bag, and asked Appellant what kind of pills were in the bag. Appellant answered that they were Lortab[1] pills, and then volunteered that he had just purchased them for ten dollars each. He further volunteered that he had gone to jail for “this” before.
Appellant filed two motions to suppress. In one, he sought to suppress the pills, arguing that when the deputy seized the plastic bag he lacked probable cause to believe the pills inside were contraband. In the second motion, Appellant sought to suppress his incriminating statements because when he identified the pills as Lor-tab and admitted to having purchased them for ten dollars apiece, he was under custodial interrogation, and the deputy failed to comply with Miranda v. Arizona[2] before propounding any questions. The trial court denied both motions.
Reviewing a lower court ruling on a motion to suppress is a mixed question of fact and law: we defer to findings of historical fact supported by competent, substantial evidence; we review de novo the application of those facts to the law. See State v. Hankerson, 65 So.3d 502, 506 (Fla.2011); Cuervo v. State, 967 So.2d 155, 160 *968 (Fla.2007). “[Ajppellate courts must independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendment and, by extension, article I, section 9 of the Florida Constitution.” Nelson v. State, 850 So.2d 514, 521 (Fla.2003). Here, the trial court’s factual findings have evidentiary support and are not in dispute. We therefore turn to applying the facts to the relevant law.
Florida law recognizes three levels of police-citizen encounters: consensual encounter, investigatory stop, and formal arrest. Popple v. State, 626 So.2d 185, 186 (Fla.1998). In a consensual encounter, a law enforcement officer may approach an individual to ask questions or request identification, but the individual is free to decline the requests and leave. Id.; see also Caldwell v. State, 41 So.3d 188, 195 (Fla.2010); State v. Goodwin, 36 So.3d 925, 926 (Fla. 4th DCA 2010) (“[T]he mere questioning of an individual, including a police request for identification, does not amount to a Fourth Amendment detention.”) (quoting State v. Dixon, 976 So.2d 1206, 1208 (Fla. 4th DCA 2008) (emphasis in original)); Brevick v. State, 965 So.2d 1246, 1249 (Fla. 5th DCA 2007) (“A detention does not occur simply because an officer approaches and asks questions or requests to examine identification.”).
The next level of encounter is a temporary detention known as an investigatory stop. Popple, 626 So.2d at 186 (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Such a detention, commonly called a Terry stop, is a seizure of the person permissible under the Fourth Amendment only if the officer has “a well-founded, articulable suspicion of criminal activity.” Id.; see § 901.151(2), Fla. Stat. (permitting investigatory detention when “circumstances ... reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state.... ”); Faunce v. State, 884 So.2d 504, 506 (Fla. 1st DCA 2004) (stating that investigative detention only justified if the officer has reasonable suspicion that individual detained has committed or is about to commit a crime). An officer’s mere suspicion or hunch is not enough to permit this type of detention. Popple, 626 So.2d at 185. A consensual encounter becomes a Terry stop “when an officer makes ‘an official show of authority from which a reasonable person would conclude that he or she is not free to end the encounter and depart.’ ” Majors v. State, 70 So.3d 655, 659 (Fla. 1st DCA 2011) (quoting Dees v. State, 564 So.2d 1166, 1167 (Fla. 1st DCA 1990)).
The third level of police-citizen encounter is custody or arrest, for which a law enforcement officer must have probable cause that a crime has been, or is being, committed. Popple, 626 So.2d at 185 (citing Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); § 901.15, Fla. Stat.). Only the first two levels are at issue in this case.
Appellant does not dispute that his encounter with the deputy initially was consensual. The deputy found Appellant lying on the ground in the rain, seemingly passed out. He approached Appellant, asked for identification, and accompanied Appellant as he went voluntarily to retrieve his wallet and license from his truck. Cf. State v. Goodwin, 36 So.3d 925, 927 (Fla. 4th DCA 2010) (holding that where officer used spotlight and flashlight when approaching appellant, but did not have her hand on her weapon or direct appellant to do anything more than produce identification, encounter remained consensual), and cases cited therein.
But Appellant argues that the encounter became an investigatory detention *969 when the deputy told Appellant to step aside, removed the bag of pills from the truck and, holding the bag, asked Appellant what they were. We agree. The deputy’s actions constituted a show of authority that would lead a reasonable person to conclude he or she was not free to end the encounter and leave. See Terry v. Ohio, 392 U.S. 1, 20 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Popple, 626 So.2d at 188; Majors, 70 So.3d at 659. Indeed, the deputy testified at the motion hearing that Appellant was not free to leave at that point. Had the deputy simply inquired about the pills, which were in plain view, without taking them from the truck, we could conclude that the interaction between Appellant and the deputy remained a consensual encounter. Cf. Keller v. State, 946 So.2d 1233, 1234 (Fla. 4th DCA 2007). (finding encounter between deputy and appellant consensual where deputy on patrol saw appellant sitting on a ledge outside convenience store, approached appellant and asked for identification, saw prescription bottle bearing another person’s name in appellant’s open purse, asked appellant about it, and appellant replied that bottle belonged to her roommate and contained hydrocodone).
The question now becomes whether the deputy had the requisite reasonable suspicion of criminal activity to permit an investigatory detention. If the detention was invalid, “any statement appellant may have made and any evidence that may have been seized were tainted and should have been suppressed.” Dames v. State, 566 So.2d 51, 52 (Fla. 1st DCA 1990). Thus we may not need to determine whether Appellant was under custodial interrogation, triggering the need for Miranda warnings.
“Whether an officer has a founded suspicion of criminal activity ... is determined by the ‘totality of circumstances.’ ” State v. Gandy, 766 So.2d 1234, 1236 (Fla. 1st DCA 2000). The State contends that the circumstances—Appellant appeared passed out on the ground; when aroused he appeared intoxicated with slurred speech; and he tried to obscure the bag of pills—reasonably led the deputy to believe the pills were contraband. We disagree. The circumstances may have justified a reasonable belief that Appellant was under the influence of whatever was in the pills, which in and of itself is not criminal activity.[3] But we find the circumstances insufficient to create a reasonable suspicion that Appellant was in unlawful possession of a controlled substance. Notably, at the motion hearing, the deputy did not testify that in his experience, people illegally in possession of prescription drugs usually carry them in plastic bags. On the contrary, he testified that in his experience, “many people” carry their prescription medications in plastic or other types of bags, and that such practice “is not uncommon.”
Moreover, the incriminating nature of the pills was not immediately apparent to the deputy such that he had probable cause to seize the bag under the plain-view doctrine. See Rimmer v. State, 825 So.2d 304, 313 (Fla.2002) (warrantless seizure of property in plain view permissible only “if at the time of the search: (1) the seizing officer was legitimately in a place where the object could be plainly viewed; (2) the incriminating nature of the seized object was immediately apparent to the police officer; and (3) the seizing officer had a lawful right of access to the object itself.”) *970 (citing Horton v. California, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). The deputy did not testify to any markings on the pills, or lack thereof, which helped him identify what they were; he observed only that they were larger than a certain brand of breath mint and larger than aspirin tablets. Again, it is not uncommon, in the deputy’s experience, for individuals to carry their legally prescribed medication in plastic bags. See Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (“If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object — i.e., if ‘its incriminating character [is not] “immediately apparent,”’ Horton [v. California], 496 U.S. [128,] 136, 110 S.Ct. 2301, 110 L.Ed.2d 112 [ (1990) ] — the plain-view doctrine cannot justify its seizure.”); Caplan v. State, 531 So.2d 88, 91 n. 1 (Fla.1988) (“The issue, however, is not merely that something can be seen, but that what is seen creates a suspicion that rises to the level of probable cause.”).
For the foregoing reasons, we find the investigatory detention invalid for lack of reasonable suspicion of criminal activity, and the seizure of the pills invalid for lack of probable cause. Appellant’s statements and the physical evidence the deputy obtained should have been suppressed. Accordingly, we reverse Appellant’s conviction and sentence, and remand to the trial court to grant the motions to suppress and discharge Appellant for the offense. See Panter v. State, 8 So.3d 1262, 1264 (Fla. 1st DCA 2009).
REVERSED and REMANDED.
LEWIS, and CLARK, JJ., Concur.

. Lortab contains hydrocodone and acetaminophen. Physician’s Desk Reference, available at http://www.pdr.net/drugpageslconcise monograph.aspx?concise=1479. Hydrocodone is included among Schedule II and Schedule III substances. See §§ 893.03(2)(a)l.j., 893.03(3)(c)4„ Fla. Stat. (2010).

. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. In fact, the deputy testified he would not have had grounds to arrest Appellant for driving under the influence because Appellant was not in physical control of his truck at the time.