LEWIS, C.J.
Appellant, Gary Hughes, appeals his convictions and sentences for possession of a controlled substance with intent to sell and possession of drug paraphernalia, arguing that the trial court erred in denying his dispositive motion to suppress. We agree with Appellant that because his arrest was not supported by probable cause, the items seized during the search incident to the arrest should have been suppressed. We, therefore, reverse Appellant’s convictions and remand.
Appellant, who was charged with possession of marijuana with intent to sell and possession of drug paraphernalia, moved to suppress the evidence found on his person following his arrest. As found by the trial court, the officer at issue testified during the suppression hearing that he encountered a juvenile in a park smoking marijuana one day before Appellant’s arrest. The officer told the juvenile that he could avoid arrest by identifying his supplier. The juvenile told the officer that his supplier’s name was Gary and provided him with Gary’s phone number. He described Gary as being a “black male.” The officer at issue and another officer conducted approximately five calls with Gary, who agreed to sell marijuana at a specific street corner. The officer at issue testified that he disguised himself by putting a large shirt over his police uniform; his police uniform pants were visible.
At some point during one of the telephone conversations, Gary suggested that the officer go to his residence to complete the transaction. The officer testified that Gary instructed him to walk up Key Street and that Gary would alert him when he was at his residence. After the officer told Gary that he did not feel safe going to his residence, Gary agreed to go to the original intersection and informed the officer that he would be there in a few minutes *935 with his cousin. The officer testified that within ten minutes of the last call, he observed two African-American men walking up Key Street. It was approximately 1:00 a.m., and no other people were visible in the area. One of the men saw the officer and “raised a hand in greeting.” According to the officer, he “guessed that that was him [Gary].” The officer approached and stated, “I’ve got your money.” One of the men stated, “f— your money,” and both men turned and walked away. After the officer identified himself, the two men ran in different directions. The officer eventually apprehended Appellant and, upon conducting a search incident to arrest, found on Appellant’s person a sandwich bag containing marijuana, thirty-nine empty baggies, and the cell phone on which the parties had been conversing. The officer testified that he arrested Appellant for “[a] charge of possession with intent to sell.” There was no evidence that the other man was ever identified.
During the suppression hearing, the trial court described the case as involving the “ragged edge” of probable cause. The court also stated, “I think we’re on thin ice to be candid about it.” In its subsequent order denying Appellant’s motion, the court found that the totality of the circumstances supported the officer’s conclusion that probable cause existed for Appellant’s arrest. Appellant subsequently pled nolo contendere to both counts while reserving his right to appeal. This appeal followed.
A trial court’s ruling on a motion to suppress comes to an appellate court clothed with a presumption of correctness. Connor v. State, 803 So.2d 598, 605 (Fla.2001). The reviewing court must interpret the evidence and reasonable inferences and deductions derived from the evidence in a manner most favorable to sustaining the trial court’s ruling. Id. A trial court’s ruling is a mixed question of law and fact. Id. The reviewing court must defer to the trial court’s factual findings as long as they are supported by competent, substantial evidence. Id. A trial court’s application of the law to the facts, however, is reviewed de novo. Id.
There are three levels of police-citizen encounters: (1) a consensual encounter during which a citizen may voluntarily comply with an officer’s request or choose to ignore him or her; (2) an investigatory stop during which an officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime; and (3) an arrest which must be supported by probable cause. Popple v. State, 626 So.2d 185, 186 (Fla.1993). To establish probable cause, the State must demonstrate that an officer had reasonable grounds to believe that the arrestee committed a crime. State v. Cuomo, 43 So.3d 838, 841 (Fla. 1st DCA 2010). The existence of probable cause is not based on a formulaic determination, but rather on the probability of criminal activity. Id.; see also Hatcher v. State, 15 So.3d 929, 931 (Fla. 1st DCA 2009) (noting that probable cause exists when the totality of the facts and circumstances within an officer’s knowledge would cause a reasonable person to believe that an offense has been committed by the person being arrested).
We find merit in Appellant’s argument that the officer lacked probable cause to arrest him. As Appellant contends, the only physical description of Gary given by the juvenile was that he was a “black male.” Although the phone number given by the juvenile led the officer to Gary, the juvenile, who had not previously served as an informant for authorities, was not present to identify one of the two men as Gary. Nor was there any evidence that the authorities had pre *936 viously suspected Appellant of possessing or selling drugs. Cf. Bravo v. State, 963 So.2d 370, 371-72 (Fla. 2d DCA 2007) (holding that the officers had probable cause to arrest the appellant where the officers verified the details provided by the informant, the officers had identified the appellant from their prior surveillance operations as a suspected methamphetamine supplier, and the officers heard on the telephone the person whom the informant identified as the appellant stating that he would bring as much methamphetamine as he could); State v. Thomas, 960 So.2d 869, 872 (Fla. 2d DCA 2007) (concluding that probable cause to arrest existed where the confidential informant’s information was corroborated by the ap-pellee’s response to her telephone call, the informant described the appellee and provided his gang affiliation, an officer confirmed that he knew of an individual whose nickname was A.D. and that A.D. was a member of a gang and matched the informant’s description, the informant identified the appellee as A.D. in a parking lot, and the officers were able to observe the appellee’s actions in response to the controlled calls). Contrary to the dissent’s characterization of what occurred, the officer did not know that Appellant would come from a particular direction in order to consummate the drug deal. As we explained, the officer had no knowledge at the time that Appellant was Gary, the man with whom the sale had been arranged.
Moreover, although one of the two men raised his hand, the officer was unable to say that that man was the man he arrested. The officer testified that he “guessed” that that was Gary. On cross-examination, the officer acknowledged that he did not know which man raised his hand, and when asked if it could have been the other man, he replied “[i]t could have been.” There was no evidence that Gary’s cousin had any involvement in the planned transaction other than simply accompanying Gary. Given such, even if it could be said that the hand raising served as an ac-knowledgement of the phone calls and would have reasonably led the officer to suspect that the man was Gary, the fact that the officer did not know whether he was arresting the man who raised his hand further supports our conclusion that the officer did not have reasonable grounds to believe that the man he arrested committed the offense of possession of a controlled substance with intent to sell. See McCloud v. State, 787 So.2d 218, 218-20 (Fla. 2d DCA 2001) (reversing the appellant’s conviction for possession of cocaine with intent to sell because although the officer knew that a drug sale had occurred, he was unable to identify which of the two men present during the sale received money in exchange for drugs and noting that while the “circumstances in this case established a possibility that [the appellant] was the one who sold the drugs ... they were at least equally consistent with his simply being a bystander”).
While the dissent relies upon Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), in support of affir-mance, the United States Supreme Court held in that case that the respondent’s presence in a high-crime area along with his unprovoked flight gave rise to a reasonable suspicion sufficient to justify an investigatory stop. 528 U.S. at 125, 120 S.Ct. 673. Although there was no evidence presented in this case that the area at issue was a high-crime area, even if, as the dissent contends, the surrounding circumstances coupled with the men’s flight gave the officer reasonable suspicion to stop the men in order to investigate, we find the dissent’s reliance upon C.E.L. v. State, 24 So.3d 1181 (Fla.2009), misplaced.
*937 In C.E.L., the Florida Supreme Court cited Wardlow and held that the defendant’s flight in a high-crime area created the reasonable suspicion sufficient to warrant a lawful investigatory stop and that the defendant’s “continued flight in knowing defiance of the officer’s lawful order to stop constituted the offense of obstructing without violence -” 24 So.3d at 1189. While the officer in this case identified himself when the men turned around, there was no evidence that he ordered the men to stop after identifying himself or after they fled. This situation is similar to one where an individual flees after seeing a person approach wearing a vest emblazoned with the word “sheriff’ or after seeing a police car arrive at the individual’s location. We do not believe, as the dissent does, that the facts before us constitute obstruction of justice. See O.B. v. State, 36 So.3d 784, 788 (Fla. 3d DCA 2010) (noting that the appellant ran in response to a police car pulling up to his location and one of the officers approaching with his gun drawn and distinguishing C.E.L. on the basis that there was no evidence that the appellant heard any order to stop when he “ ‘took off running”); S.B. v. State, 31 So.3d 968, 970 (Fla. 4th DCA 2010) (holding that the State failed to prove every element of the offense of resisting an officer where, although the appellant fled upon seeing the officers, there was no command to stop by the officers at the time the appellant fled). Cf. State v. Garcia, 126 So.3d 419, 419-20 (Fla. 2d DCA 2013) (citing C.E.L. and holding that the police, who exited a van wearing “Sheriff’ vests and yelling “Sheriffs Office,” had probable cause to arrest the appellee for resisting or obstructing an officer without violence based on his failure to cease his headlong flight in response to the officers’ directions for him to do so, which were made while the officers were chasing him).
Based upon the foregoing, the trial court erred in denying Appellant’s motion to suppress. Because the marijuana and drug paraphernalia should have been suppressed, Appellant is entitled to discharge. See Smith v. State, 95 So.3d 966, 970 (Fla. 1st DCA 2012) (holding that the trial court erred in denying the appellant’s motion to suppress and reversing and remanding with instructions to discharge the appellant for the offense); Majors v. State, 70 So.3d 655, 662 (Fla. 1st DCA 2011) (holding that the trial court erred in denying the appellant’s motion to suppress, reversing his convictions, and remanding with directions to discharge him for the offenses). We, therefore, reverse Appellant’s convictions and sentences and remand with instructions that he be discharged as to both offenses.
REVERSED and REMANDED with instructions.
ROBERTS, J., concurs; WOLF, J., dissents with opinion.