NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,                         )
                                          )
        Appellant,                        )
                                          )
v.                                        )        Case No. 2D13-4638
                                          )
CHRISTOPHER VINCI,                        )
                                          )
        Appellee.                         )
_____)

Opinion filed September 12, 2014.

Appeal from the Circuit Court for Pinellas
County; Chris Helinger, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Helene S. Parnes,
Assistant Attorney General, Tampa, for
Appellant.

Ardyn V. Cuchel of The Law Office of Ardyn
V. Cuchel, P.A., Tampa, for Appellee.

SILBERMAN, Judge.

        The State appeals an order suppressing evidence obtained by search and

seizure in this prosecution for possession of oxycodone and possession of alprazolam.

Because the deputy had probable cause to seize the prescription pill bottle and the pills

in it, we reverse the order suppressing evidence and remand for further proceedings.

At the suppression hearing, Deputy Travis Sibley was the only witness to testify. Deputy Sibley stopped Christopher Vinci's vehicle around 11:00 p.m. because the deputy believed the driver was impaired. The deputy obtained Vinci's driver's license, and Vinci advised the deputy that he had a firearm in the glove box. There was a passenger in the front seat. Deputy Sibley told them to leave their hands where he could see them and requested backup for officer safety reasons. When the backup deputy arrived, Deputy Sibley asked Vinci if he would mind exiting the vehicle. Deputy Sibley asked if there were any other guns or anything else illegal in the vehicle, and Vinci responded, "No, no, you can search."

As Vinci stepped out of the vehicle, Deputy Sibley observed a large orange pill bottle in the driver's side door pocket. The area was well lit, and the deputy had his spotlight shining on Vinci's vehicle. The deputy said he could read the label because it was in a very large font and the bottle was sitting up out of the top of the door pocket. The label had the name Christopher Vinci on it, and Deputy Sibley knew that to be the driver because he had identified him by his driver's license. The deputy could also see on the label "Suboxone, two milligrams." In addition, Deputy Sibley could see the open side of the bottle without the label and saw two pills. One was a small blue pill that he could not identify. The other was white and bar shaped; based on his training and experience, he knew it was Xanax or alprazolam. He could see all this without touching the bottle. The deputy also knew that Xanax did not resemble Suboxone. Deputy Sibley believed Vinci had committed the crime of possession of a controlled substance.

The deputy then picked up the prescription bottle, knowing there was Xanax in the Suboxone bottle. The deputy looked at Vinci and just said, "Suboxone." Vinci said he had Suboxone and some Xanax and that he had a prescription for all of it. Deputy Sibley determined that the white pill was in fact Xanax and used the website Drugs.com to verify that the other pill was oxycodone. Vinci never indicated that he had a prescription for oxycodone. Vinci was subsequently arrested for possession of oxycodone and possession of alprazolam.

At the suppression hearing the State argued that even if Vinci's consent did not extend to searching the contents of the prescription bottle, when Deputy Sibley observed the Xanax in the prescription bottle marked Suboxone the illicit nature of the substance was immediately apparent. The State asserted that because the white pill in the bottle did not match the label, the deputy had probable cause to seize the bottle and the pills in it. The trial court, however, suppressed the evidence on the basis that when the deputy observed the Xanax in the prescription bottle the illicit nature of the substance was not immediately apparent because a person could legally possess Xanax, as opposed to an item like cocaine.

On appeal of a trial court's ruling on a motion to suppress, we employ a mixed standard of review in which the trial court's determination of historical facts is subject to reversal only if the record lacks competent, substantial evidence to support the trial court's determination. State v. K.S., 28 So. 3d 985, 986 (Fla. 2d DCA 2010). Our review of mixed questions of law and fact and of legal conclusions is de novo. Id. The State argues on appeal that Deputy Sibley had probable cause to open the prescription pill bottle and seize its contents. The trial court recognized that to seize

evidence in plain view the incriminating nature of the evidence must be immediately apparent. See State v. Walker, 729 So. 2d 463, 464 (Fla. 2d DCA 1999); Keller v. State, 946 So. 2d 1233, 1234 (Fla. 4th DCA 2007). As this court has stated, "Such a determination merely requires that the facts available to the officer would lead a reasonable man of caution to believe that certain items may be contraband." Walker, 729 So. 2d at 464.

Based on the facts as determined by the trial court, the trial court erred in ruling that the incriminating nature of the items in the pill bottle was not immediately apparent to the deputy. The trial court based its conclusion on the fact that the deputy did not know whether Vinci had a prescription for Xanax. However, having a valid prescription is a defense to possession of a controlled substance. See §§ 499.03(1), 893.13(6)(a), Fla. Stat. (2012); O'Hara v. State, 964 So. 2d 839, 840-41 (Fla. 2d DCA 2007). Section 499.03(2) further provides that "possession of a drug under subsection (1) by any person not exempted under this section, which drug is not properly labeled to indicate that possession is by a valid prescription of a practitioner licensed by law to prescribe such drug, is prima facie evidence that such possession is unlawful."

Thus, possession of Xanax in a container that is not for a Xanax prescription provides prima facie evidence that the possession is unlawful. Based on this statute and the testimony the trial court relied upon, the incriminating nature of the white pill was immediately apparent and the deputy had probable cause to seize it. A valid prescription would have been a defense, but the deputy was not required to anticipate Vinci's defenses. See Keller, 946 So. 2d at 1235.

- 4 -

We note that in Smith v. State, 95 So. 3d 966, 967 (Fla. 1st DCA 2012), the First District reversed the denial of a motion to suppress when an officer seized a plastic bag containing several white pills that was on the seat of the defendant's car. That case is distinguishable because "[t]he deputy did not testify to any markings on the pills, or lack thereof, which helped him identify what they were; he observed only that they were larger than a certain brand of breath mint and larger than aspirin tablets." Id. at 970. There, the appellate court recognized that the deputy had "testified that in his experience, 'many people' carry their prescription medications in plastic or other types of bags, and that such practice 'is not uncommon.' " Id. at 969. Although the practice is not uncommon, section 499.03(2) shows that the practice results in a prima facie case of illegal possession of a controlled substance. The Smith case did not mention section 499.03(2). However, based on the facts presented, the court observed that "the incriminating nature of the pills was not immediately apparent to the deputy." Id.

In State v. Deaton, 109 So. 3d 338, 340 (Fla. 4th DCA 2013), the Fourth District determined that an officer lacked probable cause to make an arrest for a felony based on one oxycodone pill found in the defendant's pocket during a consensual search. The court observed that oxycodone can be possessed lawfully with a prescription and that "it is not unusual for a traveler with a valid prescription to separate a pill from a prescription bottle for later consumption." Id. The Deaton case also did not mention section 499.03(2).

Based on section 499.03(2) and the facts relied upon by the trial court, we determine that the trial court erred as a matter of law in determining that the deputy

- 5 -

illegally seized the prescription pill bottle and the pills in it. Thus, the trial court should not have suppressed the evidence.

Vinci also makes a tipsy coachman[1] argument that the suppression should be affirmed because the trial court erred as a matter of law in determining that the deputy made a lawful stop of Vinci's vehicle for a DUI investigation. To support a valid stop for a DUI offense an officer needs only a founded suspicion of criminal activity. State, Dep't of Highway Safety & Motor Vehicles v. DeShong, 603 So. 2d 1349, 1352 (Fla. 2d DCA 1992). Erratic driving such as weaving within a traffic lane has been determined sufficient to support a reasonable suspicion of a DUI offense. See id. "The courts of this state have recognized that a legitimate concern for the safety of the motoring public can warrant a brief investigatory stop to determine whether a driver is ill, tired, or driving under the influence in situations less suspicious than that required for other types of criminal behavior." Id.; see also State v. Davidson, 744 So. 2d 1180, 1180-1181 (Fla. 2d DCA 1999). In Roberts v. State, 732 So. 2d 1127, 1128 (Fla. 4th DCA 1999), the court determined that "Roberts' continuous weaving, even if only within her lane, during the time that she was being followed presented an objective basis for suspecting that she was under the influence."

Here, at around 11:00 p.m., the deputy observed Vinci for approximately a mile weaving within his lane. Vinci's vehicle would drift to the right side of the lane and hit the reflectors and then drift to the left side of the lane and hit the reflectors, and Vinci consistently did this for about a mile. He then turned on his left turn signal, slowly

---

[1]See Ray v. State, 40 So. 3d 95, 98 (Fla. 4th DCA 2010) (stating that the tipsy coachman doctrine allows an appellate court "to affirm a lower court's holding when the lower court reached the correct result despite using incorrect reasoning").

drifted over into the left lane, continued driving, and left his turn signal blinking. Under these circumstances, the trial court did not err in determining that the deputy had a reasonable suspicion to make an investigatory stop to determine whether Vinci was impaired. Therefore, we reject Vinci's argument regarding the stop of his vehicle.

Based on the analysis above regarding the seizure of the pill bottle and its contents, we reverse the suppression order and remand for further proceedings.

Reversed and remanded.


BLACK and SLEET, JJ., Concur.